McKinney, J.,
delivered tbe opinion of tbe Court.
*515 This was an action of trover, for the alleged conversion of a quantity of tobacco. Verdict and judgment were rendered for the defendant, and the plaintiff ap^. pealed in error.
The plaintiff, as constable, had levied on, the lot of tobacco, as the property of William Joyner, the father of defendant, Joseph Joyner; after, which the defendant, claiming to be the proper, owner of the tobacco, obtained possession thereof, and refused to deliver it to the plaintiff.
The facts respecting the ownership of the tobacco appenr to be, that the old man, Joyner, who was in debt, and had a large family of ten children, which he was unable to support by reason of his poverty and physical disability, entered into a contract with his son, the defendant, by which the latter agreed to take two of his brothers — boys of the respective ages of eleven and thirteen years — and a horse beast belonging to his father, and to raise a crop, and furnish the family with provisions for that year, (1857.) Out of the crop he was to reimburse himself for the supplies furnished to the family, and also retain reasonable wages; and whatever beyond this remained of the proceeds of the crop, was to go to the payment of his father’s debts. William Joyner, the father of defendant, was examined on the trial as a witness for defendant, and admitted that the object of the above arrangement was to provide a support for his family, and to prevent the crop from being seized by creditors — being unable himself to supply his family with the necessaries of life.
The tobacco in controversy is part of the crop raised by the defendant under the above arrangement.
*516 For the plaintiff it is contended that this was a fraud upon the old man's creditors, and that, in law, the crop raised was the property of the father, and liable to the satisfaction of his debts.
We do not think so. We have said in a recent case—Hamilton v. Zimmerman, 5 Sneed, 39, 45—that every man is under a positive obligation, both -in law and morals, to support and maintain his family;, that this is his first and most imperative duty. An unfortunate debtor is not bound to appropriate the proceeds of his daily labor, to the benefit of creditors, leaving his own family to suffer hunger and want.
The position assumed for the plaintiff has no foundation in our law. The general principle is well established, that a conveyance, though fraudulent, of an interest not liable to creditors, is not within the prohibition of the statute of frauds. It is equally well-settled that the creditor cannot coerce the debtor to-labor for his benefit. If, in the case before us, the-old man, even without any consideration, had relinquished the use of his horse (which the law protects to him) and the labor of his two minor sons, to the defendant, upon what principle could any creditor of the former have complained of it ? He might use his horse himself, or give the use to another, at pleasure; and so-in regard to the labor and services of his minor children. In the arrangement that was made, there was no transfer of property, or of anything of which, in the absence of such arrangement, the creditors of the father could have availed themselves, by law, for the satisfaction of their debts. Consequently their rights •were in nowise prejudiced thereby.
Judgment affirmed.